UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-CV-81262-ROSENBERG

KEVIN JOYCE,

    Plaintiff,

v.

FOREST RIVER, INC. & FREIGHTLINER
CUSTOM CHASSIS CORPORATION,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants Forest River, Inc. and Freightliner Custom Chassis Corporation's Motions for Summary Judgment. DEs 53, 57. The Motions are fully briefed. The Court has reviewed the record and is otherwise fully advised in the premises. The Court **GRANTS** the Motions, finds that Plaintiff has not established his entitlement to a refund for his RV, and agrees with the arbitrator's decision. Furthermore, the Court finds that Plaintiff has failed to establish a violation of the Magnuson-Moss Warranty Act (the "MMWA").

**I.     FLORIDA LEMON LAW'S LEGAL FRAMEWORK**

Plaintiff Kevin Joyce seeks a full refund of the recreational vehicle ("RV") manufactured by Defendants Forest River and Freightliner (the "Manufacturers") pursuant to Florida's Motor Vehicle Warranty Enforcement Act, found at Fla. Stat. § 681.10, *et seq*. The Act, commonly referred to as Florida's Lemon Law, "provide[s] the statutory procedures whereby a consumer may receive a replacement motor vehicle, or a full refund, for a motor vehicle which cannot be brought into conformity with the warranty provided for in" the law. Fla. Stat. Ann. § 681.101 (West). A consumer is entitled to replacement or refund of the vehicle "[i]f the manufacturer, or its authorized

service agent, cannot conform the motor vehicle to the warranty *by repairing or correcting any nonconformity after a reasonable number of attempts*[.]" Fla. Stat. Ann. § 681.104 (West) (emphasis added).

The Lemon Law establishes the presumption that "a reasonable number of attempts have been undertaken to conform a motor vehicle to the warranty, if during the Lemon Law rights period, either" of the following occurs. Fla. Stat. Ann. § 681.104 (3) (West).[1]

> (a) The same nonconformity has been subject to repair at least three times by the manufacturer or its authorized service agent, *plus a final attempt* by the manufacturer to repair the motor vehicle if undertaken as provided for in paragraph (1)(a), and such nonconformity continues to exist; or
>
> (b) The motor vehicle has been *out of service by reason of repair of one or more nonconformities* by the manufacturer, or its authorized service agent, for a cumulative total of . . . 60 or more days in the case of a recreational vehicle, . . . . The manufacturer or its authorized service agent must have had *at least one opportunity to inspect or repair the vehicle following receipt of the notification* as provided in paragraph (1)(b).

Fla. Stat. Ann. § 681.104 (3) (West) (emphasis added). The requirement that manufacturers receive one final opportunity to cure a nonconformity after multiple repair attempts and written notification of intent to pursue Lemon Law redress is repeatedly mentioned throughout the statutory presumption and the broader statute. *See id.* ("(1)(a) . . . allow the manufacturer a final attempt to cure the nonconformity. . . (b) . . . give the manufacturer or its authorized service agent an opportunity to inspect or repair the vehicle . . . (3) . . . (a) . . . plus a final attempt by the manufacturer to repair the motor vehicle . . . (b) . . . manufacturer or its authorized service agent must have had at least one opportunity to inspect or repair the vehicle following receipt of the notification[.]").

The statutory definitions are also instructive as to the scope of when refund or replacement of an RV is available to a consumer. The RV must have a recurring or serious nonconformity,

---

[1] The Lemon Law rights period is twenty-four months "after the date of the original delivery of a motor vehicle to a consumer." Fla. Stat. Ann. § 681.102 (9).

which is a "defect or condition that substantially impairs the use, value, or safety of" the covered vehicle. Fla. Stat. Ann. § 681.102 (15) (West).  And a nonconformity can be present in any part of the recreational vehicle except its living facilities; nonconformities in living facilities are not covered by the Lemon Law's warranty. Fla. Stat. Ann. § 681.102(14) (West) ("'Motor vehicle' . . . includes a recreational vehicle . . . but does not include . . . the living facilities of recreational vehicles.").[2]

A consumer seeking relief under the Lemon Law for a RV with a nonconformity must first submit the dispute to Florida's RV mediation and arbitration program. Fla. Stat. § 681.1097.  Any party to the dispute can appeal an arbitrator's decision to the circuit court for a "trial de novo." Fla. Stat. §§ 681.1097(7), 681.1095(12).  Though the arbitrator's decision is not binding on the trial court, the arbitrator's decision may be admitted as evidence. Fla. Stat. § 681.1097(7), (8).

Pending before the Court are the Manufacturers' Motions for Summary Judgment. Summary judgment is granted if "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting F. R. Civ. P. 56(c)).  When the non-movant carries the burden of proof as to a claim but fails to make a sufficient showing as to any element, the movant is entitled to summary judgment. *Id.*

The Court's Order discusses the undisputed facts related to each Manufacturer's repairs of Plaintiff's RV and whether Plaintiff has a statutory right to a refund for his RV.  Following the Court's analysis of Plaintiff's Lemon Law claim, the Court discusses Plaintiff's remaining MMWA claim against Freightliner.

---

[2] "'Living facilities of recreational vehicles' are those portions designed, used, or maintained primarily as living quarters and include, but are not limited to, the flooring, plumbing system and fixtures, roof air conditioner, furnace, generator, electrical systems other than automotive circuits, the side entrance door, exterior compartments, and windows other than the windshield and driver and front passenger windows." Fla. Stat. Ann. § 681.102 (14) (West).

## II. UNDISPUTED FACTS

The following facts are properly before the Court in the Manufacturer's Statements of Material Facts, all of which were admitted by Plaintiff.[3] The timeline of the notice and repair of each nonconformity is relevant as to each Manufacturer and as such, the Court outlines its understanding of this timeline as to the Manufacturers.

### a. Forest River

Plaintiff's RV is a 2020 Forest River Berkshire 34 QS Class A that he purchased from Lazy Days RV, an authorized Forest River dealership in Florida. DE 54 at ¶ 1. Forest River is the Manufacturer responsible for every part of the RV, including the living facilities but excluding the chassis. *Id.* at ¶ 3.

After purchasing the RV and driving it to Massachusetts, Plaintiff notified Forest River and Lazy Days of issues with the RV's headlights, back-up camera, and components of the RV's living facilities. DE 58 at ¶¶ 16–18. Forest River instructed Plaintiff to take the RV in for service in New Hampshire at Camping World, another authorized service agent of Forest River. DE 58 at ¶ 17; DE 54 at ¶ 13. On July 15, 2020, Plaintiff took the RV to Camping World for service on the headlights, back-up camera, and living facility components. DE 58 at ¶¶ 17–19; DE 54 at ¶ 15; DE 1-3 at 115; DE 58-2 at 218–223. Forest River next instructed Plaintiff to drive the RV to Lazy Days in Florida where some needed repairs could take place. DE 54 at ¶ 16.

By the time Plaintiff arrived at Lazy Days in Florida on September 10, 2020, the RV needed servicing of the steering wheel, back-up camera, windshield, chassis, various living facility

---

[3] Plaintiff's first Statement of Material Facts, DE 67, violated Local Rule 56.1, which requires a non-movant's statement of material facts to first "clearly challenge" the material facts of the movant by corresponding with the movant's facts and stating whether disputed or undisputed. *See* Local Rule 56.1(a)(2), (b)(2). The first Statement was not responsive to either of the Manufacturer's Statements. Then, after the briefing period had concluded and without requesting leave from the Court, Plaintiff filed a second Statement of Material Facts at docket entry 78. The Court will not grant leave for an amended filing *nunc pro tunc* because (i) Plaintiff did not request leave and (ii) such an amendment would prejudice the Manufacturers by requiring them to expend attorney's fees on amended reply briefs. The Court also notes that Plaintiff's late filing was still deficient as it was only responsive to the Statement of Material Facts of one of the Manufacturers, not both.

components, and more. DE 58 at 25; DE 1-3 at 115; DE 58-2 at 224–27; DE 48 at 13.  Lazy Days kept possession of the RV until November 4, 2020, when Lazy Days presented the RV to a Freightliner service shop for work on the chassis. DE 54 at ¶ 21.  On February 3, 2022, after the RV was subject to two attempts to repair by Forest River, Plaintiff sent Forest River a Motor Vehicle Defect Notice, a standard form, stating in part that the vehicle had been subject to three or more repair attempts on the same defects. DE 58 at ¶ 26; DE 59-3.

On February 14, 2022, Forest River serviced Plaintiff's RV for its third and final time in Indiana. DE 58 at ¶¶ 29–30.  Forest River addressed various issues, including the back-up cameras and some living facility components. DE 58-2 at 235.

Plaintiff has not provided the total number of days Forest River and its authorized service centers held Plaintiff's RV for nonconformities covered under Florida's Lemon Law.

### b. Freightliner

Freightliner is responsible for the chassis of Plaintiff's RV. DE 54 at ¶ 3.  The only issue Plaintiff identified relating to the chassis is that the RV's check engine light has been illuminated since the 2020 return trip from the Camping World dealership in New Hampshire to Lazy Days in Florida. *Id.* at ¶¶ 17–19.  Plaintiff notified Forest River, and not Freightliner, of the check engine light issue. *Id.* at ¶ 20.  It was not until November 4, 2020, that Lazy Days "presented the RV to [Ocala] Freightliner," an authorized Freightliner service shop. *Id.* at ¶¶ 21, 25.  Over the course of eight days, Freightliner addressed the illuminated check engine light, repairing the underlying issue, and addressed a Freightliner recall. *Id.* at ¶ 23.

On February 2, 2022, after Freightliner had serviced the RV once, Plaintiff sent a Motor Vehicle Defect Notice to Freightliner. *Id.* at 32.  Then, on March 3, 2022, Lazy Days again gave the RV to Ocala Freightliner to address a recall and the illuminated check engine light. *Id.* at ¶ 25. Ocala completed the repairs over the course of five days. *Id.* at ¶ 26.

5

For a third time, on April 21, 2022, Lazy Days gave Plaintiff's RV to Ocala to address "a recall relating to valve stem stabilizers, an illuminated check engine light, and an active low coolant lamp." *Id.* at ¶ 27. Ocala completed the repairs over the course of five days. *Id.* at ¶ 28.

When Plaintiff notified Freightliner of the ongoing illuminated check engine light situation and his continued intent to seek statutory remedies under Florida's Lemon Law, Freightliner performed an inspection and identified an issue with the RV's DEF sensor. *Id.* at ¶¶ 32–34. Freightliner offered to replace the part, but Plaintiff has not provided his RV to Freightliner for it to replace the part. *Id.* at ¶ 35.

### c. Procedural History

Plaintiff submitted his dispute with the Manufacturers to arbitration pursuant to Fla. Stat. § 681.1095, through which he seeks a refund for the RV, attorney's fees, and expert costs. After a hearing, the arbitrator issued his decision on June 29, 2023. DE 1-3 at 114. The arbitrator found that Plaintiff had not met his burden in meeting the statutory presumption of eligibility for refund or replacement. *Id.* at 119. The arbitrator denied Plaintiff's request for a refund and instead ordered the Manufacturers to perform limited repairs on the RV. *Id.* at 115. Plaintiff timely appealed the arbitrator's decision to state court, and the Manufacturers removed the case to this Court.

### III. APPLYING THE LEMON LAW

In their respective Motions, the Manufacturers argue against Plaintiff's statutory entitlement to a refund for his RV because his failure to meet or exceed the statutory presumption of when "a reasonable number of attempts have been undertaken to conform a motor vehicle to the warranty[.]" Fla. Stat. § 681.104. The Court addresses the Manufacturer's arguments separately.

### a. Forest River

Forest River argues that Plaintiff failed to provide it with sufficient statutory notice and to put forth evidence establishing the statutory presumption that a reasonable number of attempts of repair has been met. DE 57.  Forest River argues that it and its authorized repair facilities serviced the RV on three separate occasions—not the minimum of four occasions for the same nonconformity required by the statutory presumption—and that Plaintiff has not calculated the number of out-of-service days the RV has sustained for issues covered by the Lemon Law. *Id.* at 9–11.

In response, Plaintiff does not address the argument nor support his position with citations to the record in his Statement of Material Facts.[4]  Plaintiff does not identify which nonconformities persisted and whether they were serviced by Forest River and its authorized dealers on four separate occasions.  Nor does Plaintiff provide a calculation of how many out-of-service days the RV sustained for covered nonconformities.  Instead, Plaintiff focuses on when he noticed the defects with the RV, including issues with the chassis and living facilities, and notes a series of out-of-service day calculations which do not isolate the days for covered nonconformities.

Simply put, Plaintiff has failed to carry his burden of proof establishing the statutory presumption for when a refund or replacement is available to a consumer.  Despite having notice of these deficiencies from the arbitration decision and Forest River's Motion, he has yet to supplement the record.  Therefore, the Court finds Plaintiff is not entitled to a refund or replacement of his RV.

### b. Freightliner

Freightliner argues that Plaintiff is not entitled to a refund or replacement because he has not met the statutory presumption as for Freightliner's part of the recreational vehicle, the chassis.

---

[4] *See supra* n.3.

DE 53. This is because Plaintiff had not taken the recreational vehicle to one of Freightliner's authorized repair shops for the same nonconformity at least four times, and the recreational vehicle had not accumulated at least sixty out-of-service days for chassis-related issues. *Id*. These arguments are in Freightliner's Statement of Material Facts and Plaintiff has admitted all of these facts. Thus, Plaintiff has admitted the basis for each of these arguments and has not established the statutory presumption for entitlement for refund or repair of the RV.

Ultimately, the Court agrees with the arbitrator's decision that Plaintiff failed to carry his burden to show that the RV had been subject to a reasonable number of attempted repairs and that the Manufacturers were provided with one final attempt to repair the RV pursuant to the requirements under the Lemon Law. Under these circumstances, as a matter of law Plaintiff cannot proceed to a jury trial and the Manufacturers should be afforded another opportunity to correct any remaining issues with the RV.

## IV.   MMWA CLAIM

Plaintiff's remaining claim against Freightliner arises under the Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2301, *et seq.*, which in part provides a federal cause of action for a warrantor that does not comply with the written warranty obligations. *See* 15 U.S.C. § 2310 (d)(1). Plaintiff alleges that, in failing to successfully repair the RV, Freightliner violated its Limited Warranty. DE 28 at ¶¶ 43–47. Freightliner argues that Plaintiff failed to comply with Freightliner's Warranty by not providing the RV for repair immediately after noticing the defect and that Freightliner did not violate the terms of its Warranty.

Freightliner's Warranty requires consumers to present their vehicle to an authorized repair shop "as soon as a problem exists." DE 28 at 38. In turn, Freightliner promises that covered repairs will be "completed in a reasonable amount of time, not to exceed 30 days." *Id.* As to Freightliner's obligation, though the illuminated check engine light was an ongoing problem in Plaintiff's RV,

Plaintiff has conceded that the light is merely a signal of many different underlying issues. *See* DE 54 at ¶ 36. Each time Plaintiff's RV was serviced by Freightliner or one of its authorized facilities, the issue was repaired in less than ten days. *Id.* at ¶¶ 23–28. The RV currently has an illuminated check engine light; Freightliner has determined that the light is related to a DEF sensor that can be fixed, but Plaintiff has not provided Freightliner with the RV for repair. *Id.* at ¶¶ 33–35. With these undisputed facts, Plaintiff cannot prove that Freightliner has violated its warranty. Freightliner completed repair of each defect presented to it within the required timeframe and has only been unable to complete repair of the current defect because it lacks possession of the RV.

## V.  CONCLUSION

Plaintiff has failed to carry his burden as to his claims under Florida's Lemon Law and the MMWA. For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

- Freightliner's Motion for Summary Judgment, DE 53, is **GRANTED**.
- Forest River's Motion for Summary Judgment, DE 57, is **GRANTED**.
- The Court agrees with the arbitrator's decision in CAP-RV FLORIDA #90-221012 ARBITRATION that the Manufacturers should be afforded another opportunity to repair the RV.
- The Court **DENIES AS MOOT** all other pending motions, including the Motion for Sanctions at docket entry 76 previously referred to the Magistrate Judge.

- The Clerk of the Court shall **CLOSE THIS CASE**. Defendants shall provide a proposed final judgment, in Microsoft Word format, to rosenberg@flsd.uscourts.gov within three business days of the date of rendition of this Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 24th day of July, 2024.

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE